IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., : <br> : <br> Plaintiff, : <br> : <br> vs. : <br> : <br> CHAN M. PARK D/B/A : <br> BILLARES DE TUCKER, : <br> : <br> Defendant. : | CIVIL ACTION NO. <br> 1:12-CV-2026-CC |

## OPINION AND ORDER

This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s Application for Default Judgment [Doc. No. 6] (the "Motion for Default Judgment"). For the reasons stated below, the Court **GRANTS** Plaintiff's Motion.

**I. BACKGROUND**

A. Procedural History

On June 12, 2012, Plaintiff filed suit against Defendant Chan M. Park d/b/a Billares De Tucker. In its Complaint, Plaintiff alleges that Defendant violated The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 and The Communications Act of 1934, 47 U.S.C. § 605 by unlawfully intercepting, receiving, and exhibiting *"Fight of the Year: The Rematch!": Juan Manuel Marquez v. Juan Diaz Championship Fight Program* (the "Program").[1] Plaintiff served the Complaint on Defendant on June 18, 2012. (Doc. No. 4.) To date, Defendant has not answered or otherwise responded to Plaintiff's Complaint.

On July 11, 2012, Plaintiff filed a motion for clerks entry of default; thereafter, the Clerk of Court entered default against Defendant. Then on July 27, 2012, Plaintiff filed the instant Motion for Default Judgment.

---

[1] The Program included all under-card bouts and fight commentary encompassed in the television broadcast of the event.

B.     Factual History

In its Complaint, Plaintiff alleges that it is a commercial distributor of sporting events and had exclusive nationwide television distribution rights to the Program, which took place on July 31, 2010. Plaintiff entered into sub-licensing agreements with various commercial entities whereby Plaintiff granted these entities limited rights to publicly exhibit the Program to patrons in their establishments. Plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers. Defendant did not contract with Plaintiff nor did Defendant pay the necessary sub-license fee to get the Program for its commercial establishment, Billares De Tucker.

On July 31, 2010, Jeffery Maben, an investigator that Plaintiff had retained, visited Billares De Tucker, which is located at 3201 Tucker Norcross Road, Tucker, Georgia 30084-2152. While there, Maben observed the unlawful exhibition of the first-round bout between Joel Casamayor and Robert Guerrero. Maben did not pay a cover charge to enter Billares De Tucker, and there is no evidence that the Defendant advertised the showing of the Program. The capacity of Billares De Tucker is approximately 250 patrons, but Maben observed only 75 to 81 patrons during the 22 minutes that he was in the establishment. For an establishment with a 250-patrons capacity, the commercial sub-license rate to exhibit the Program publicly would have been $2,200.00.

Plaintiff's president, Joseph M. Gagliardi, attests that, to the best of his knowledge, Plaintiff's Program cannot be mistakenly, innocently, or accidentally intercepted. However, a signal pirate can use several methods to unlawfully intercept and broadcast Plaintiff's programming. Although Plaintiff fails to allege the specific method that Defendant used to intercept Plaintiff's Program, signal

piracy has resulted in Plaintiff's loss of revenue and has raised the cost of service for lawful residential and commercial customers of cable and satellite broadcasting.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 55, a court may enter a default judgment in favor of a party who has applied to the court for a default judgment. Fed. R. Civ. P. 55(b).  Default judgment is a drastic remedy to be used only in extreme situations because courts have a wide range of lesser sanctions available. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316-17 (11th Cir. 2002) (citing Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).  But when a party has sought a judgment for affirmative relief from a party who has failed to plead or otherwise defend and this fact appears by affidavit or otherwise, entry of default judgment is appropriate.  Id. at 1316 (citing Fed. R. Civ. P. 55(a)).

A defaulted defendant admits the plaintiff's well-pleaded allegations of fact, and the default judgment concludes those facts. Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)[2] (citations omitted); Vuitton v. Wright, No. 1:88-CV-2750-HTW, 1992 WL 448394, at *3 (N.D. Ga. July 24, 1992) (citations omitted).  Consequently, if the well-pleaded allegations, which are assumed to be true, support the default judgment, then that judgment cannot be attacked on the merits. Nishimatsu Constr. Co., 515 F.2d at 1206 (citing Thomson v. Wooster, 114 U.S. 104, 110, 5 S. Ct. 788, 791, 29 L. Ed. 105 (1884)).

The Court may hold a hearing to assess damages when a default judgment is warranted. S.E.C. v. Smyth, 420 F.3d 1225, 1231, 1232 & n.13 (11th Cir. 2005) (citing Fed. R. Civ. P. 55(b)(2)).  Alternatively, damages may be determined based on affidavits showing the necessary facts.  Adolph Coors Co. v. Movement Against

---

[2] All decisions that the former Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Racism and the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985). "A court has an obligation to assure that there is a legitimate basis for any damage award it enters . . . ." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).  However, discretion as to the judgment or the need for a hearing on damages is vested with the district court.  Pope v. United States, 323 U.S. 1, 12, 65 S. Ct. 16, 22, 89 L. Ed. 3 (1944) (citation omitted) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

### III. DISCUSSION

#### A. Liability

Section 553 prohibits "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1) (2012).  Section 605 provides, in pertinent part, as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a) (2012).

There is disagreement among the circuit courts about whether § 605 covers the interception of cable services carried over a cable network.  The Second Circuit has held that § 605 applies to satellite transmissions and cable programming transmitted over a cable network.  See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir.

1996) (holding that §§ 605 and 553 cover interception of cable programming transmitted over a cable network). In contrast, the Third and Seventh Circuits have taken the position that only § 553 covers the interception of cable programming transmitted over a cable network and that § 605 covers the interception of cable transmissions traveling through the air. See TKR Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001) (finding that Congress removed coverage of wire communications from § 605 and concluding that § 605 thus was inapplicable to theft of cable service via a cable descrambler); United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996) (affirming district court's finding that "where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network"); see also Charter Commc'ns Entm't I, DST v. Burdulis, 460 F.3d 168, 172-76 (1st Cir. 2006) (First Circuit concluding that the statutory text and structure of the regulatory regime of § 605 make clear that it does not apply to signals delivered by wire over a cable network). The Eleventh Circuit has not yet addressed the issue.

Consistent with many district courts within the Eleventh Circuit, this Court finds the interpretation of § 605 by the Third and Seventh Circuits persuasive. Joe Hand Promotions, Inc. v. ADJ Entity, LLC, No. 3:11–cv–90 (CAR), 2011 WL 4102314, at *3 n.3 (M.D. Ga. Sept. 14, 2011); J & J Sports Prods., Inc. v. Allen, No. 1:10-cv-4258-WSD, 2011 WL 941502, at *2 (N.D. Ga. Mar. 14, 2011); CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361, 1364 (S.D. Fla. 1999). That is, § 605 prohibits commercial establishments from intercepting and broadcasting satellite transmissions, while § 553 applies exclusively to broadcasts over a cable network. Plaintiff also acknowledges that "[t]he majority of the [c]ourts have found that Section 605 applies

to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system." (Mem. of Law Supp. Pl.'s Appl. for Default J. at 4.)

Plaintiff pleads that Defendant violated §§ 553 and 605. To prevail under §§ 553 or 605, a plaintiff must allege that the defendant has (1) intercepted or aided the interception of the program, (2) not paid for the right to receive the transmission, and 3) divulged or published, or aided the divulging or publishing of the program to patrons of defendant's establishment. See Joe Hand Promotions, Inc. v. Kebede, No. 1:09-CV-02373-RWS, 2011 WL 294503, at *3 (N.D. Ga. Jan. 26, 2011) (citing Cal. Satellite Sys. v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985)); J & J Sports Prods., Inc. v. Just Fam, LLC, No. 1:09-cv-03072-JOF, 2010 WL 2640078, at *2 (N.D. Ga. June 28, 2010) (citing J & J Sports Productions, Inc. v. Fitzgerald, No. 1:09-cv-1684-WSD, 2009 U.S. Dist. LEXIS 101593, at *9 (N.D. Ga. Oct. 30, 2009)).

Here, Plaintiff does not specify in either its Complaint or motion papers how Defendant intercepted the Program. However, the Court recognizes, as other courts have, that the manner of interception may be exclusively in Defendant's knowledge. Zuffa, LLC v. Al-Shaikh, No. 10-00085-KD-C, 2011 WL 1539878, at *5 (S.D. Ala. Apr. 21, 2011); Allen, 2011 WL 941502, at *3; Joe Hand Promotions, Inc. v. Blanchard, No. 409CV100, 2010 WL 1838067, at *2 (S.D. Ga. May 3, 2010); Joe Hand Promotions, Inc. v. McBroom, No. 5:09-cv-276(CAR), 2009 WL 5031580, at *2 (M.D. Ga. Dec. 15, 2009). Accepting Plaintiff's well-pleaded facts as true, the Court finds that Defendant's conduct, as set forth in the Complaint, violates §§ 553 and 605. See ADJ Entity, LLC, 2011 WL 4102314, at *4 (finding that "the facts established by the default are sufficient to show liability under both § 503 and § 605"); Zuffa, LLC, 2011 WL 1539878, at *5 (finding that the plaintiff has "sufficiently pleaded its case so as to establish [d]efendants' liability under both Section 553 and 605"); Allen, 2011 WL

941502, at *3 (finding that the plaintiff had "alleged and presented sufficient evidence that [d]efendant violated the common elements of both § 605 and § 553").

B.  Damages

Pursuant to § 553, the Court may award statutory damages between $250.00 and $10,000.00 per violation. 47 U.S.C. § 553(c)(3)(A)(ii). The Court may also award up to $50,000.00 in enhanced damages if the Court finds that the conduct was committed willfully and to obtain commercial advantage or private financial gain. Id. § 553(c)(3)(B). Statutory damages under § 605 range from $1000.00 to no more than $10,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, where the conduct was committed willfully and to obtain commercial advantage or private financial gain, § 605(e)(3)(C)(ii) allows for enhanced damages up to an additional $100,000.00. Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1311 (11th Cir. 2009). The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II). Finally, § 605 provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees" to the prevailing party, whereas § 553 states that the Court may award these costs. 47 U.S.C. § 605(e)(3)(B)(iii) and § 553(c)(2)(C).

Plaintiff seeks $10,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) for Defendant's violation of § 605(a) or $10,000.00 in statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii) for Defendant's violation of § 553(a). Additionally, Plaintiff seeks $100,000.00 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff also requests attorneys' fees and costs in an amount to be determined. Recovery under §§ 553 and 605 is not permissible. Allen, 2011 WL 941502, at *2 n.2; Fitzgerald, 2009 WL 3681834, at *2 n.1. "When a defendant has violated both §§ 553 and 605, most courts choose to award damages under § 605 because that provision 'allows for greater recovery by plaintiffs.'" Just Fam, LLC,

2010 WL 2640078, at *2 n.3 (quoting Enter. by J & J, Inc. v. Al-Waha Enters., 219 F. Supp. 2d 769, 775 (S.D. Tex. 2002)).  The difference in the minimum and maximum amount of damages allowed by §§ 553 and 605 is immaterial because the statutory damages and enhanced damages that this Court will award do not fall below or above the permissible ranges of the two statutes.  Because Plaintiff specifically requests, in the declaration of its attorney, an award of statutory and enhanced damages pursuant to § 605,[3] (Decl. of Ronald D. Reemsnyder in Supp. of Pl.'s Appl. for Default J. [Doc. No. 6-1] ¶ 7), the Court will award damages under the requested section.

The Court finds that an award to Plaintiff of $2,200.00 in statutory damages is warranted and sufficient because that is the fee Defendant would have paid to obtain a commercial sub-license to exhibit the Program publicly.  See ADJ Entity, LLC, 2011 WL 4102314, at *4 (awarding statutory damages in the amount of the license fee that the defendant, based on its maximum capacity, would have paid the plaintiff if it had legally purchased the right to exhibit the program); McBroom, 2009 WL 5031580, at *4 (same); J & J Sports Prods., Inc. v. Arboleda, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009) (same); Kingvision Pay–Per–View Corp. v. El Torito Supermarket, Inc., No. 6:06–cv–657–Orl–18KRS, 2007 WL 1794158, at *3 (M.D. Fla. June 19, 2007) (same).

The Court also finds that an award of enhanced damages is justified.  Consistent with other courts in this circuit, the Court awards Plaintiff enhanced damages in the amount of $6,600.00, which is three times the amount of the sub-licensing fee and sufficient to deter Defendant and others from committing future violations.  See Blanchard, 2010 WL 1838067, at *4-5 (awarding enhanced damages

---

[3] Plaintiff alternatively requests statutory damages under § 553, but in its Declaration, Plaintiff does not request enhanced damages under § 553. (Doc. No. 6-1 ¶ 7.)

where the establishment is a first-offender, did not charge for entry, and did not advertise the broadcast, among other things; enhanced damages equal to three-times the statutory award); Arboleda, 2009 WL 3490859, at *7 (same); McBroom, 2009 WL 5031580, at *5-6 (same); Zuffa, LLC, 2011 WL 1539878, at *8-9 (same). This results in a total award of $8,800.00 to Plaintiff.

Finally, as the prevailing party, Plaintiff is entitled to an award of costs and reasonable attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii). But Plaintiff has not submitted any evidence to allow the Court to determine a reasonable award for fees and costs. Therefore, Plaintiff has fourteen (14) days from the date of this Order to submit an application and affidavit supporting attorneys' fees and costs.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion and **AWARDS** Plaintiff $8,800.00 in damages against Defendant. The award consists of $2,200.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $6,600.00 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). The Court **INSTRUCTS** Plaintiff to submit an application and affidavit supporting attorneys' fees and costs within fourteen (14) days from the date of this Order. After the Court addresses the issue of attorneys' fees and costs, the Court will direct the Clerk of Court to enter default judgment for Plaintiff and against Defendant.

SO ORDERED this 28th day of March, 2013.

*s/   CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE